BEFORE THE SECOND DIVISION, MARCH 26, 1953

**No. 57219.**—Steelmasters, Inc. *v.* United States, petitions 6852–R, 6854–R, and 6876–R (New York).

RAO, Judge: Several importations of chinaware from Bavaria, Germany, were entered at the port of New York on the basis of the ex-factory prices, as invoiced. The appraiser likewise adopted the invoice unit prices but used those figures which represented the f. o. b. port of exportation prices. As the result of his action, the appraised values exceeded the entered values, and, pursuant to the provisions of section 489 of the Tariff Act of 1930, additional duties were assessed. The instant petitions, which were consolidated for the purposes of trial, are the means by which petitioner seeks a remission of said additional duties.

The only witness called to testify at the trial was Arthur Scholder, vice president of Steelmasters, Inc. He stated that petitioner is engaged in the business of importing goods from Europe, including chinaware, and that as so-called foreign buyer for said company he has familiarized himself with market values and questions relating thereto of merchandise purchased by his firm.

In connection with the entries before the court in these cases, most of the purchases of the merchandise covered thereby were made as the result of trips abroad taken personally by this witness. It appears that the factory from which these shipments were purchased, namely, that of Heinrich & Co., was located in the city of Selb, in Northern Bavaria, which is in the United States Zone of Germany. When, after the war, petitioner resumed its business with German manufacturers, Scholder and the president of petitioner went abroad and personally purchased this merchandise, the prices for which were at all times quoted on an ex-factory basis, including cases and packing. In this connection, the witness stated:

* * * Naturally, we had to pay the inland freight charges, that is to get the goods from Selb to the sea port, which was Bremen or Hamburg, and as a matter of fact, I personally made arrangements outside of the factory's province with the joint import and export agency of the military government and we arranged for a Swiss company called the Controll Company to transport the goods from the factory to the sea port for purposes of convenience in making payment and I say

that all the payments at that time when we started business were not made to the factory but were made to the American military government authorities, the entire charge, that is the charge of the goods ex-factory, plus the cartage was paid in toto to the military government.

Since, in the opinion of this witness, Selb was the principal market for the purchase of chinaware, and any charges accruing subsequent thereto were not dutiable, he issued instructions for the entry of the merchandise at the ex-factory prices. These instructions were also based on intraoffice conferences, consultations with petitioner's attorneys and with the customs brokers who had handled petitioner's business for over 30 years.

It also appears that in 1948 petitioner instructed its attorneys to obtain a ruling from the Bureau of Customs with respect to the inclusion of inland freight in the case of chinaware purchased by petitioner from the Rosenthal Co., also of Selb. Under date of May 18, 1950, the Bureau of Customs advised the appraiser at the port of New York that inland freight charges from Selb, Germany, to the seaport are not dutiable. A copy of this ruling, which was received in evidence as petitioner's exhibit 1, was also forwarded to petitioner's attorneys.

Although the appraiser received the Bureau's ruling prior to the time when the merchandise here involved was appraised, he did not apply the principle therein suggested to the involved shipments. He did, however, employ the ex-factory prices with respect to all exportations from the Rosenthal Co., and also all shipments from the Heinrich factory subsequent to the group here in issue.

No appeal for reappraisement was filed by petitioner in connection with the instant entries because "the advance in actual dollars which we would have to pay out would be so small as to not warrant an application for reappraisement." "We didn't feel it was warranted as far as the time and expense were concerned. Particularly, our judgment was guided by the fact that we had received this ruling after hearings in Washington on the exact same question involving the importations from Rosenthal."

The instant record establishes that petitioner made a complete and candid disclosure of all of the facts in its possession having a bearing upon the true value of its merchandise. An honest difference of opinion arose between petitioner and the appraiser as to the dutiability of certain inland freight charges, which resulted in the discrepancy between the entered and appraised values. Petitioner, through its attorneys, sought to resolve the dispute through the medium of a request for a ruling from the Bureau of Customs, which, after a consideration of all of the relevant data, sustained the position taken by the importer.

Under all the facts and circumstances of this case, we are satisfied that the entries of the instant merchandise at less values than those returned by the appraiser were without any intention to defraud the revenues of the United States, to conceal or misrepresent the facts of the case, or to deceive the appraiser as to the values of this merchandise. The petitions are, therefore, granted.

Judgment will be entered accordingly.